UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KENNETH T. CHAVEZ, *on behalf of himself
and all others similarly situated*,[1]

                Plaintiff,                        **REPORT & RECOMMENDATION**
                                                              **20 CV 1388 (ENV)(LB)**

     -against-

L2 LIU INC, d/b/a QUALITY INN NEAR
SUNSET PARK,

                Defendant.
------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff, Kenneth Chavez, brings this civil action against L2 Liu Inc d/b/a Quality Inn Near Sunset Park Hotel ("L2 Liu"), alleging that it violated his rights under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12182, *et seq.*; the ADA Accessibility Guidelines ("ADAAG"), 28 C.F.R. Part 36; the New York Civil Rights Law, N.Y. Civ. Rights Law §§ 40 *et seq*; the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW §§ 297 *et seq*; and the New York City Human Rights Law ("NYCHRL"), N.Y. CITY ADMIN. CODE §§ 8-120(8), 8-126(a), and 8-502(a). Plaintiff seeks declaratory and injunctive relief and an award of statutory damages, compensatory damages, and punitive damages, as well as attorney's fees and costs.

       Despite proper service of the summons and complaint, defendant has failed to plead or otherwise defend this action. Plaintiff now moves for a default judgment against defendant pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No. 10. The Honorable Eric N. Vitaliano referred plaintiff's motion for a default judgment to Magistrate Judge James Orenstein for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). On

---

[1] Although this action was purportedly brought "individually and on behalf of all others similarly situated," it was never certified as a class action. ECF No. 1 at 1.

1

November 18, 2020, this case was reassigned to me. For the reasons set forth below, it is respectfully recommended that plaintiff's motion for default judgment should be granted in part and denied in part as set forth herein.

## FACTUAL BACKGROUND[2]

The ADA embodies our national commitment to advocate for people with disabilities and is considered one of the most comprehensive pieces of civil rights legislation in American history. *Introduction to the ADA*, ADA.Gov (Jan. 20, 2021, 8:07 PM), http://www.ada.gov/ada_intro.htm. Although the law is well-intentioned, courts across the country have grappled with a cottage industry of plaintiffs' attorneys who, encouraged by the statute's attorney's fee provision, bring suits to extract nuisance value settlements by identifying ADA violations with no intention of seeking remediation.[3] These nuisance value settlements are achieved with relative ease as plaintiffs are not required to exhaust administrative remedies. Furthermore, as plaintiffs are not required to give notice to defendants prior to filing their lawsuit,[4] they can begin incurring attorney's fees even before defendants are aware of the alleged ADA violations.

---

[2] The facts are drawn from the uncontested allegations in plaintiff's complaint and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F. 3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment).

[3] See e.g., Adams v. 724 Franklin Ave. Corp., No. 16-CV-5138, 2016 WL 7495804, *2 (E.D.N.Y. Dec. 30, 2016) (citing cases); Deutsch v. Henry, No. A-15-CV-490, 2016 WL 7165993, at *21 (W.D. Tex. Dec. 7, 2016) adopted by 2017 WL 5652384 (W.D. Tex. Mar. 28, 2017); Ashley v. Zaharopoulos Props., LLC, No. 3:12-CV-00305, 2013 WL 3422906, at *1 (E.D. Ark. July 8, 2013); Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 1:11-CV-941, 2012 WL 1440226, at *8 n.7 (M.D.N.C. Apr. 26, 2012); Molski v. Mandarin Touch Rest., 347 F. Supp. 2d 860 (C.D. Cal. 2004).

[4] The United States House of Representatives passed the ADA Education and Reform Act of 2017, which would require plaintiffs to give defendants notice and an opportunity to cure the alleged ADA violations prior to filing suit. H.R. 620, 115th Cong. (2017). The United States Senate has not acted on H.R. 620; thus, to date, no pre-suit notice is required.

It therefore comes as no surprise that lawsuits brought under the ADA have increased three-fold in recent years, particularly with regard to cases alleging limited accessibility at businesses, as in the instant case. *Just the Facts: Americans with Disabilities* Act, UNITED STATES COURTS (Jan. 20, 2021, 10:00 AM), https://www.uscourts.gov/news/2018/07/12/just-facts-americans-disabilities-act. This is but one of the twelve nearly identical cases plaintiff has filed in the Eastern District of New York since 2019 claiming lack of accessibility at various Brooklyn businesses.[5] The complaint does not reflect that plaintiff notified defendant of this potential violation before filing the instant lawsuit.

Plaintiff Kenneth Chavez, a resident of New York County, New York, alleges he is a uniped and an amputee and that he must use a wheelchair or other motorized mobility device. Plaintiff therefore states he suffers from a "qualified disability" under the ADA. ECF No. 1, Complaint, ("Compl.") ¶¶ 9–10.

The defendant, L2 Liu, is a New York Corporation that owns and/or operates the hotel "The Quality Inn at Sunset Park" ("the Hotel") and controls its website (located at www.choicehotels.com/new-york/brooklyn/quality-inn-hotels/ny634?source=gyxt), ("the Website"), where prospective guests are able to reserve rooms. Id. at ¶¶ 11–12. Other websites operated by third parties ("the Websites"), including www.booking.com and www.hotels.com, also allow individuals to use a reservation system to reserve rooms at the Hotel. Id. at ¶ 36.

Prior to filing his Complaint, on May 7, 2019 and various dates thereafter, Chavez visited the Website and the Websites with the intent to learn about the Hotel's accessibility and to ascertain whether or not he could book a room that would meet his needs. Id. ¶ at 37. He discovered that

---

[5] See Case Nos. 1:19-cv-01069-SJ-ST; 1:19-cv-02324-NGG-RM; 1:20-cv-00804-EK-RER; 1:19-cv-01454-DLI-CLP; 1:20-cv-01131-KAM-JO; 1:20-cv-01393-KAM-RML; 1:20-cv-01042-ENV-RER; 1:20-cv-00428-RRM-LB; 1:19-cv-02645-RPK-VMS; 1:20-cv-01535-WFK-VMS; 1:20-cv-05416-FB-RLM; 1:20-cv-00977-RRM-LB.

while the Website lists the Hotel as an "Accessible Hotel" and "Mobility Accessible," the Website does not describe the accessibility details of the rooms. Id. at ¶ 39. Further, the reservation system does not identify which rooms are accessible and which rooms are not. Id. The Website also does not include information concerning accessibility of the common areas, hotel amenities, and whether the Hotel is designed in accordance with the ADA 1991 Standards for Accessible Design. Id. ¶ at 41. Chavez alleges he desires to stay at the hotel and intends to visit the Website at some point in the future to determine whether he can book an accessible room. Id. ¶ at 44. Chavez sought to bring this suit on behalf of himself and on behalf of all others similarly situated, namely, on behalf of a class comprised of "all disabled individuals in the United States that are unable to walk as a result of their disability and, as a consequence, must use a wheelchair or other motorized mobility device and who have been denied equal access to goods and services of the Defendant's Hotel, Website and the Websites," Id. at ¶ 16, and a New York State and a New York City subclass who have experienced the same. Id. at ¶¶ 17–18. As previously noted, *supra* note 1, this class was never certified.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing his complaint against defendant on March 16, 2020. ECF No. 1. Plaintiff filed proof of service, reflecting that the summons and complaint were served on defendant on March 20, 2020. ECF No. 8. Defendant's answer was due on April 10, 2020. Fed. R. Civ. P. 12(a)(1)(A)(i)). When defendant failed to answer or otherwise appear in the action, plaintiff requested, and the Clerk of Court noted entry of defendant's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF Nos. 8–9. As prompted by the Court's June 1, 2020 Order, plaintiff now moves for a default judgment against defendant pursuant to Rule 55(b)(2). ECF No. 10, Motion for Default Judgment by Kenneth T. Chavez

4

("Default Motion"). On July 9, 2020, Judge Vitaliano referred plaintiff's motion to Magistrate Judge Orenstein for a Report and Recommendation. On November 18, 2020, this case, including plaintiff's motion for a default judgment, was reassigned to me.

## DISCUSSION

### I. Standard for a Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, [a] plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). However, regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for

liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (internal quotation marks and citation omitted).

In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic, 109 F.3d at 111).

## II. Standing

Questions of justiciability must be resolved as a prerequisite to a federal court's entry of default judgment. Warth v. Seldin, 422 U.S. 490, 498 (1975). Although defendant has not appeared, the Court must consider whether plaintiff has standing to bring this action. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (standing is an "irreducible constitutional minimum[.]"). In the context of ADA cases, the Second Circuit has found standing where:

> (1) the plaintiff allege[s] past injury under the ADA; (2) it [is] reasonable to infer that the discriminatory treatment [will] continue; and (3) it [is] reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [the public accommodation] to plaintiff's home, that plaintiff intend[s] to return to the subject location.

Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187–88 (2d Cir. 2013) (citing Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (per curiam)). Applying these standards, courts have recognized a concrete and imminent injury, warranting injunctive relief, where plaintiffs allege actual knowledge of barriers impeding access and a "plausible intention or desire to return

6

to the place but for the barriers to access." Feltzin v. 183 South Wellwood Ave. Corp., No. 16-CV-5387, 2017 WL 6994213, at *2 (E.D.N.Y. 2017) (citing Disabled in Action of Metropolitan New York v. Trump Int'l Hotel & Tower, No. 01-CV-5518, 2003 WL 1751785, at *7 (S.D.N.Y. 2003)).

Injunctive relief is appropriate where the effects of a defendant's discrimination are ongoing. Cf. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (finding that "'[p]ast exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects'" (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). In Disabled in Action, the court distinguished "Lyons-like" ADA cases, where the injury was not ongoing, and "non-Lyons-like" ADA cases. 2003 WL 1751785, at *7. The former group includes undesirable situations that a reasonable person would not want to experience again in the future, like an arrest or emergency room visit. Id. By contrast, the latter group of cases involve places that a person would want to revisit but for the continuing accessibility barrier. Id. "Since visiting an online reservation system is more similar to the neutral or positive experience of visiting a restaurant or a shopping mall, rather than visiting an emergency room or being arrested," it is plausible that plaintiff will return to the website to assess whether or not he can make a reservation. Gonzalez v. Bahar Corp., No. 19-CV-575, 2019 U.S.Dist.LEXIS 58567, at **9–10 (E.D.N.Y. Apr. 3, 2019) (Report and Recommendation) adopted by 2019 U.S. Dist. LEXIS 98349 (E.D.N.Y. June 10, 2019).

"Intent to return is a highly fact-sensitive inquiry that incorporates a range of factors including not only the proximity of the defendant's services . . . to the plaintiff's home . . . but also other factors relevant to the calculation of the plaintiff's intent to return such as occupation or demonstrated travel habits." Bernstein v. City of New York, 621 Fed. Appx. 56, 59 (2d Cir. 2015) (summary order) (citing Kreisler, 731 F.3d at 187–88 and Camarillo, 518 F.4d at 158).

7

In the ADA context, the concept of standing has been so eroded that it has been established even on threadbare allegations. See Harty v. Simon Prop. Grp., L.P., 428 Fed. Appx. 69, 71 (2d Cir. 2011) (summary order) (finding that plaintiff's future undefined intention to return to a mall in the vicinity where his family lived established plausible intention to return); Gonzalez, 2019 U.S.Dist.LEXIS 58567, at *7 (finding that plaintiff's future plans to return to a website to assess whether he could make a reservation at a hotel in the area where his family lives, to be reasonable).

Here, plaintiff passes the threshold, albeit barely, to establish standing to bring this action pursuant to the ADA. Plaintiff merely states that he "desire[s] to stay at the hotel" and that he "plans on visiting the Website and Websites regularly to see if the [defendant has] modified their site to be in compliance with the ADA." Compl. at ¶ 37. Given the proximity of plaintiff's home, in New York County, to the Hotel, which is in Sunset Park, Brooklyn, the Court questions why plaintiff would want to stay in a hotel so close to his home. Nevertheless, it is reasonably plausible that plaintiff has an intent to return to the Website and the Hotel. See Gonzalez, 2019 U.S.Dist.LEXIS 58567, at *7 (plaintiff's "desire to return to the website is especially plausible because this action can be completed by a few keystrokes, without a cost, and at any time."). Thus, I find that plaintiff has established standing to bring this case.

### III. Liability

#### 1. The ADA

On July 26, 1990, Congress enacted the ADA, explaining that its purpose was to provide a clear and comprehensive national mandate to eliminate discrimination against individuals with disabilities, to provide clear and enforceable standards to address discrimination, to ensure that the federal government plays a central role in enforcing those standards, and to invoke the sweep of

congressional authority in order to address the major areas of discrimination faced day-to-day by people with disabilities. 42 U.S.C. § 12101(b)(1)–(4).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

The Department of Justice, pursuant to Congress' delegation of authority, promulgated 28 C.F.R. § 36.302(e)(1)(i)–(v) and the "ADA Accessibility Guidelines" (the "ADAAG"), Appendix A of Part 36, to enforce the ADA's prohibition of discrimination in "an inn, hotel, motel, or other place of lodging . . ." 42 U.S.C. § 12181(7)(A); 42 U.S.C. § 12182(a); 42 U.S.C. § 12186(b).

As of March 15, 2012, the ADAAG requires that places of lodging, with respect to reservations made by any means, "including by telephone, in person, or through a third party," meet the following standards:

> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
>
> (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;
>
> (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and
>
> (v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

9

28 C.F.R. §36.302(e)(1).

The ADAAG further elaborates the minimum information hotels must provide. See 28 C.F.R. Part 36, Appx. A. Hotels are required to identify and describe all accessible features in the hotel and guest rooms; "[t]his requirement is essential to ensure individuals with disabilities receive information they need to benefit from the services offered by the place of lodging." Id. Moreover, merely labeling a guestroom as "accessible" or as "ADA" not is sufficient as "[such a designation] does not ensure necessarily that the room complies with all of the 1991 Standards." Id. For hotels in buildings constructed prior to the 1991 Standards, hotel websites should include, at a minimum:

> Information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, those hotels should provide information about important features that do not comply with the 1991 Standards. For example, if the door to the "accessible" room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear).

Id. For hotels built after the effective date of the 1991 Standards, it is sufficient to advise that the hotel itself is fully ADA compliant, and for each accessible guestroom, to specify the room type, the type of accessible bathing facility in the room, and the communications features in the room.

Plaintiff's complaint alleges that, because there is no way for a prospective guest to search ADA accessible rooms on the Website or the Websites,[6] individuals with disabilities, such as himself, are prevented from making reservations at the Hotel in the same manner as individuals who do not need accessible rooms, thereby violating 28 C.F.R § 36.302(e)(1)(i), Compl. at ¶¶ 37, 39, 40. Plaintiff alleges the Website also violates § 36.302(e)(1)(ii), because it does not provide

---

[6] These standards apply to reservations made by any means, "including by telephone, in person, or *through a third party*." 28 C.F.R. §36.302(e)(1) (emphasis added).

accessibility information about the hotel rooms, common spaces, or parking accommodations as set forth in 28 C.F.R. Part 36, Appx. A. Compl. at ¶¶ 39, 41.

To establish a violation of the ADA, a plaintiff must plead that: (1) he has a disability; (2) he was 'otherwise qualified' for the benefit that has been denied; (3) the defendants are subject to one of the acts; and (4) he was denied opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his or her disability." Johnson v. Levy, 812 F.Supp.2d 167, 180 (E.D.N.Y. 2011).

Plaintiff has alleged sufficient facts to establish that defendant has violated §§ 36.302(e)(1)(i)–(ii) under the ADA. Plaintiff's disability is a "qualified disability" under Title III of the ADA. Defendant is subject to the ADA regulations because it operates a hotel, a place of public accommodation. Plaintiff establishes that he was unable to make a reservation in the same manner as an individual without need for an accessible room, as is required by 28 C.F.R. §36.302(e)(1)(i). Additionally, plaintiff has shown that he was denied sufficient information to reasonably assess independently whether or not the Hotel's rooms would meet his needs, in violation of 28 C.F.R. §36.302(e)(1)(ii). As such, plaintiff is entitled to a default judgment on his claims under §§ 36.302(e)(1)(i)–(ii). Plaintiff has shown that the Website does not include the minimum information required by the 1991 Standards.

The Complaint does not, however, establish defendant's liability under §§ 36.302(e)(1)(iii)–(v) since plaintiff fails to allege facts regarding the Hotel's reservation policy regarding the holding, blocking, and guarantee of reserved accessible rooms. Thus, plaintiff fails to meet factor (4) of the Johnson analysis and plaintiff's request for a default judgment for his claims under §§ 36.302(e)(1)(iii)–(v) should be denied.

### 2. The New York Civil Rights Law, the NYSHRL, and the NYCHRL

Plaintiff also alleges that defendant violated the New York Civil Rights Law, the NYSHRL, and the NYCHRL. Compl. at ¶¶ 67–99. "The elements that establish liability under the ADA are sufficient to state a claim under the New York Civil Rights Law." Ross v. Royal Pizza Cafe Corp., No. 17-CV-6294, 2018 WL 6313208, at *4 (E.D.N.Y. Aug. 1, 2018) (Report and Recommendation) adopted by 2018 WL 6313182 (E.D.N.Y. Dec. 3, 2018) (internal quotation marks and citation omitted). The NYSHRL is "construed coextensively with [Title III]." Puerner v. Hudson Spine and Paine Medicine P.C., No. 17-CV-03590, 2018 WL 4103491, at *3 (S.D.N.Y. 2018) (citing Viera v. City of N.Y., No. 15-CV-5430, 2017 WL 3130332, at *13 (S.D.N.Y. 2017). Accordingly, as plaintiff establishes defendant's liability under the ADA, he also does so under the New York State Civil Rights Law and NYSHRL.

NYCHRL claims "must be reviewed independently from and more liberally than their federal and state counterparts." Loeffler v. Staten Isl. Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009). Indeed, the ADA constitutes a "floor below which the [NYCHRL] cannot fall." Id. (internal quotation marks and citation omitted). Since plaintiff establishes a claim under the narrower state and federal standards, he also does so under the broader NYCHRL.

### IV. Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks and citation omitted). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit

12

Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court, however, does not need to hold a hearing, as "detailed affidavits and documentary evidence" may be sufficient. Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

### A. Injunctive Relief

Individuals may seek injunctive relief under the ADA. 42 U.S.C. §12188(a)(1). Injunctive relief under the ADA shall:

> Include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter.

42 U.S.C. § 12188(a)(2).

28 C.F.R §§ 36.302(e)(1)(i)–(ii) describes the modifications defendant should take to ensure its Website and the information that it provides to third party online reservation systems are non-discriminatory to individuals with disabilities. Accordingly, I respectfully recommend that the Court enter an injunction ordering defendant to:

> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.

See 28 C.F.R § 36.302(e)(1)(i)–(ii); 28 C.F.R. Part 36, Appx. A. Further, if the Hotel's building was constructed prior to 1991, the Hotel shall amend its website to include, at a minimum:

> Information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, those hotels should provide information about important features that do not comply with the 1991 Standards. For example, if the door to the "accessible" room or bathroom is narrower than required, this information should be included (e.g., door to guest room measures 30 inches clear).

See 28 C.F.R. Part 36, Appx. A. If the hotel was built after the effective date of the 1991 Standards, the Website shall be amended to advise that the Hotel itself is fully ADA compliant, and for each accessible guestroom, specify the room type, the type of accessible bathing facility in the room, and the communications features in the room.

### B. Statutory Damages Under New York Civil Rights Law

Plaintiff seeks $500 in statutory damages under the New York Civil Rights Law. Section 40-d provides that defendants who violate the provisions of New York Civil Rights Law § 40-c "shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside." N.Y. Civ. Rights Law § 40-d. Here, the Court has competent jurisdiction over the hotel which is located in Kings County. Compl. at ¶ 11. Additionally, as discussed above, plaintiff's allegations are sufficient to establish a violation of Section 40-c. However, while plaintiff states that he provided notice to the Attorney General of his lawsuit, as required by § 40-d, see Compl. at ¶ 82, he has not filed proof of said notice with the Court. Therefore, I respectfully recommend that plaintiff's request for $500 in statutory damages should be denied without prejudice under New York Civil Rights Law.

### C. Compensatory Damages Under NYSHRL and NYCHRL[7]

Although the ADA does not provide for compensatory damages, plaintiffs are entitled to compensatory damages under the NYSHRL and the NYCHRL. Manswell v. Heavenly Miracle Academy Serv's, Inc., No. 14-CV-7114, 2017 WL 4075180, at *2 (E.D.N.Y. 2017). Plaintiff requests a $1,000 compensatory award. The New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish "any particular damages other than what a decent and reasonable individual would suffer when faced with such ignorant behavior." Kreisler, 2012 WL 3961304, at *42. I therefore respectfully recommend that plaintiff should be awarded $1,000 in compensatory damages.

### D. Punitive Damages

Under the NYCHRL, "a plaintiff is entitled to punitive damages where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." Chauca v. Abraham, 30 N.Y.3d 325, 329 (N.Y. 2017) (internal quotation marks and citation omitted). Plaintiff seeks an unspecified amount of punitive damages. Plaintiff's allegations do not establish that defendant has been willfully or wantonly negligent, reckless, or has consciously disregarded the rights of others or engaged in conduct so reckless as to amount to such disregard. Therefore, I respectfully recommend that plaintiff's request for punitive damages under the NYCHRL should be denied.

---

[7] Plaintiff seeks additional compensatory damages "for services as the lead plaintiff" and seeks damages "for any individual in the Subclass that was discriminated against by the Defendant." Memorandum of Law, ECF No. 10-2. As the proposed class was never certified, the Court only assesses plaintiff's individual claims for damages.

15

### E. Attorney's Fees and Costs

The ADA, 42 U.S.C. §12205, and the NYCHRL, N.Y.C. Admin. Code § 8-502(g), permit a court to award a reasonable attorney's fee, including litigation expenses, and costs to the prevailing party in an ADA litigation. Plaintiff seeks an attorney's fee award of $3,336.66 (at a rate of $385 per hour) and incurred costs of $600.00 ($400.00 filing fee and $200.00 process service fee). Plaintiff should be granted leave to file a motion for attorney's fees and costs within six months upon demonstrating reasonable efforts to enforce the injunctive relief recommended herein.[8] See Taylor v. 312 Grand St. LLC, No. 15-CV-5410, 2016 WL 1122027, at *6 (E.D.N.Y. Mar. 22, 2016) ("[I]t is incumbent upon counsel to actually make some effort to achieve something in this case besides obtaining a piece of paper (the judgment) . . . [the Court is] deferring the issue of fees until such time as plaintiff can demonstrate that he has made a reasonable effort to obtain compliance with the injunction."). Owners of public accommodation should improve access to

---

[8] Courts across the country have discussed concerns about serial ADA litigation used to extract attorney's fees from defendants. As Judge Cogan discussed in a similar ADA default case,

> It is true that not only the undersigned, but other judges in this district, and indeed judges around the country, have questioned whether the ADA in some instances has become a vehicle of abuse by certain plaintiff's attorneys who have created a cottage industry by bringing multiple cases against small businesses on behalf of the same plaintiff when that plaintiff has no genuine intention of using the services of so many businesses.

Adams, 2016 WL 7495804, *2 (citing cases). Plaintiff's counsel is on notice that "[w]here cases involve identical legal issues and similar factual issues, the duplicitous nature of the litigation warrants a reduction in the law firm's fee." Cankat v. 41st Ave. Rest. Corp., No. 15-CV-4963, 2016 WL 7217638, *3 (E.D.N.Y. Dec. 12, 2016) (citation omitted). In these situations, Courts may "(i) cut the number of hours billed, (ii) reduce the amount of the fee, or (iii) disallow the entire amount." Beach 90th St. Realty Corp., No. 11-CV-2551, 2013 WL 6835157, at *7 (E.D.N.Y. Dec. 20, 2013) (citing cases). Plaintiff's Memorandum in Support inexplicably states that, "[a]ccording to the 2014 Census there are 208,000 deaf and hard of hearing individuals that live in New York State. Consequently, the Plaintiff and the Subclass seek the following damage award," at page 16. This "cut and paste" error on counsel's part is revealing and inexcusable. It is embarrassing that the Court needs to remind plaintiff's counsel of his client's disability in this case. Mr. Chavez is not deaf.

16

their facilities for people with disabilities. However, attorney's fees should not motivate these complaints or supplant actual remediation efforts.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for a default judgment should be granted in part and denied in part. I recommend that the Court should issue an injunction as described in Part IV. A, *supra*, to bring defendant's hotel into compliance with the ADA, the New York Civil Rights Law, the NYSHRL, and the NYCHRL. Plaintiff's request for $500 in statutory damages under the New York Civil Rights Law should be denied without prejudice and plaintiff should be granted leave to file proof that he served the Attorney General with notice of this action at or before its commencement. Plaintiff should be awarded $1,000 in compensatory damages under the NYSHRL and the NYCHRL. Plaintiff's request for punitive damages under the NYCHRL should be denied. I further recommend that plaintiff's request for an award of attorney's fees and costs under the ADA should be denied without prejudice and that plaintiff's counsel should be granted leave to file a motion for attorney's fees and costs upon demonstrating reasonable efforts to enforce the injunction within six months of any Order adopting this Report. Plaintiff is hereby directed to serve copies of this Report and Recommendation upon the defendant by regular and certified mail, and file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension

of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: February 26, 2021
      Brooklyn, New York